UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
PATRICIA MILNE,                                                         :
                                                                        :
                                    Plaintiff,                          :     08 Civ. 8964 (PAE)
                                                                        :
            -v-                                                         :     <u>OPINION & ORDER</u>
                                                                        :
NAVIGANT CONSULTING, INC.,                                              :
                                                                        :
                                    Defendant.                          :
                                                                        :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

Plaintiff Patricia Milne, proceeding *pro se*, and defendant Navigant Consulting, Inc. ("Navigant") cross-move for summary judgment on Milne's claim for retaliatory termination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. EXEC. LAW § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y. CITY ADMIN. CODE § 8-101 *et seq*.  For the following reasons, Milne's motion is denied and Navigant's motion is granted.

I.      **Background**[1]

        A.      **Milne's Employment with Navigant**

---

[1] The facts that form the basis of this Opinion are primarily drawn from: (1) Defendant's Local Civil Rule 56.1 Statement ("Def.'s 56.1") (Dkt. 65); (2) Plaintiff's Local Civil Rule 56.1 Counterstatement ("Pl.'s Counter.") (Dkt. 72); (3) Defendant's Response to Plaintiff's Counterstatement ("Def.'s Resp.") (Dkt. 86); (4) Plaintiff's Local Civil Rule 56.1 Statement ("Pl.'s 56.1") (Dkt. 75); and (5) Defendant's Response to Plaintiff's Statement and Local Civil Rule 56.1 Counterstatement ("Def.'s Counter.") (Dkt. 77).  Facts in dispute are noted.

Despite the Court's repeated admonishments to Milne that her sole surviving claim at this stage of the litigation is for retaliatory termination, her 56.1 Statement and her Counterstatement recite numerous facts relevant only to claims previously dismissed.  Additionally, Milne's Rule 56.1 Statement and Counterstatement are almost entirely without reference to the record and are, as such, of limited evidentiary value on a motion for summary judgment.

1

On September 5, 2006, Milne was hired by Navigant, a consulting firm, as an administrative specialist. Def.'s 56.1 ¶ 2; Pl.'s Counter. ¶ 4. Milne's last day with Navigant was June 30, 2008. Def.'s 56.1 ¶ 2; Pl.'s Counter. ¶ 4. The parties dispute whether Milne left Navigant willingly, or was forced to resign. Milne claims that Jessica Le, a Navigant employee, told her that Mary Stafford, then-Senior Manager of Operations for Navigant's New York office and Milne's supervisor, was planning to force her to resign. Pl.'s 56.1 ¶ nnn. Navigant denies this, and, in an affidavit, Le attests that no such conversation took place, and that she was out of the office on vacation during the time Milne claims the conversation occurred. Def.'s Counter ¶ nnn; Affidavit of Jessica Le in Support of Defendant's Opposition to Plaintiff's Motion for Summary Judgment ("Le Aff.") (Dkt. 80) ¶ 9. The parties do agree that, on May 29, 2008, Milne sent an email to Debra Ombrello, then-Director of Office Operations, with copies sent to four other Navigant employees, which stated, in relevant part:

> I am writing to let you know that I am planning to move back to Toronto at the end of June. If you are able to facilitate a transfer to our Toronto office, it would be greatly appreciated.

Affidavit of Mary Stafford in Support of Defendant's Motion for Summary Judgment ("Stafford Aff.") (Dkt. 67) Ex. A; *see also* Def.'s 56.1 ¶ 7; Pl.'s Counter. ¶ 42.

On or about May 29, 2008, Stafford met with Milne about the email, which Stafford understood to be Milne's voluntary resignation. Def.'s 56.1 ¶¶ 11-12; Pl.'s Counter. ¶ 44. Milne, on the other hand, attests that she believed she was going to be forced to resign, and decided to seek what she characterizes as a preemptive transfer to Navigant's Toronto office. Pl.'s 56.1 ¶ ooo; Pl.'s Counter ¶ 41. At the meeting, Milne told Stafford that she intended to move to Toronto even if Navigant did not have an open position for her there, and did not clarify that she had no intention to voluntarily resign her position. Def.'s 56.1 ¶¶ 13-14, 18; *see also*

2

Affidavit of Garry L. Wills in Support of Defendant's Motion for Summary Judgment Ex. C (Deposition of Patricia Milne) ("Milne Dep.") (Dkt. 68) 115-16.  When Stafford asked Milne when her last day at Navigant would be, Milne refused to provide that information.  Def.'s 56.1 ¶ 16; Pl.'s Counter ¶¶ 45-46.

On June 2, 2008, Milne stopped coming to work.  Def.'s 56.1 ¶ 20; Pl.'s Counter ¶ 52.  Because Milne failed to inform Navigant when her last day of work would be, Navigant determined that her last day would be June 12, 2008, two weeks after she had sent the email about moving to Toronto.  Def.'s 56.1 ¶¶ 21, 23.  On June 11, 2008, a Navigant human resources employee drafted a letter to Milne—which was never sent—informing her that her voluntary resignation would be effective the following day, June 12.  *Id.* ¶ 24.  On June 11, 2008, before that letter was sent, Milne emailed a different human resources employee at Navigant, requesting time off pursuant to the Family and Medical Leave Act ("FMLA").  *Id.* ¶ 25; Pl.'s 56.1 ¶¶ bbbb-cccc.  On June 12, Navigant sent a letter to Milne (1) enclosing FMLA forms for her to complete and return and (2) informing her that her voluntary resignation would be effective June 30, 2008.  Def.'s 56.1 ¶ 27; Pl.'s 56.1 ¶ dddd.  On June 16, 2008, Milne sent an email to Navigant, stating that there had been a "miscommunication," and that she had never provided Stafford or anyone else at Navigant with any "time and date" on which Milne would leave her position.  Stafford Aff. Ex. C; *see also* Def.'s 56.1 ¶ 30; Pl.'s 56.1 ¶ eeee.  Milne neither completed the FMLA forms nor returned to work at Navigant during the month of June, or thereafter.  Def.'s 56.1 ¶¶ 20, 28; Pl.'s 56.1 ¶ dddd.

### B.   Internal and EEOC Harassment Complaints

Milne alleges that, in 2007, Paul Braithwaite, a Managing Director at Navigant, made harassing and discriminatory remarks to her.  Pl.'s 56.1 ¶¶ f-h.  However, it is undisputed that

3

Milne did not make any internal complaint about these harassing remarks, nor did she file a complaint with the Equal Employment Opportunity Commission ("EEOC"). Milne Dep. 160; Def.'s Counter. ¶ k. Milne also claims that, on November 16, 2007, Mark Springer, an Associate Director at Navigant, sexually harassed her: She alleges that he said to her, "I would like to see you drunk and do you," and, "Because of the way you are, no man wants you." Milne also alleges that, when she attempted to leave Springer's office after he made these comments, he grabbed her arm in an attempt to physically restrain her. Pl.'s 56.1 ¶¶ p-r; Def.'s 56.1 ¶¶ 31-32. Milne told Braithwaite, Brett Goldman (an analyst), Tracy Stewart (Stafford's assistant), and Stafford about the November 16, 2007 incident with Springer; Stafford informed Joe Blalock, Springer's supervisor; and the incident was reported to Navigant's human resources department. Pl.'s 56.1 ¶¶ v-x; Def.'s 56.1 ¶¶ 33-35; Milne Dep. 94-95, 160-61. In late November 2007 (the parties dispute the precise date), Julie Baker, a Navigant human resources employee, interviewed Milne about the November 16, 2007 incident. Pl.'s 56.1 ¶ gg; Def.'s 56.1 ¶ 36. Based on its investigation of the incident, Navigant decided to terminate Springer; on November 30, 2007, Springer resigned in anticipation of his termination. Def.'s 56.1 ¶¶ 37-38.

In or about April 2008, Milne told Karen Zerbo, an administrative assistant at Navigant, that she intended to file an EEOC charge relating to the November 16, 2007 incident with Springer. *Id.* ¶ 39; Pl.'s 56.1 ¶¶ lll-mmm. Milne told only Zerbo that she planned to file an EEOC charge; Zerbo did not tell anyone else at Navigant because she did not believe that Milne was truly going to file any such charge. Pl.'s Counter. ¶ 47; Def.'s 56.1 ¶¶ 39-42; Milne Dep. 66. On June 12, 2008, the EEOC received Milne's complaint. Stafford Aff. Ex. D; Pl.'s Counter. ¶ 55; Def.'s 56.1 ¶ 44. It is undisputed that Milne never told Stafford, or anyone else at Navigant other than Zerbo, about her intention to file an EEOC complaint. Def.'s 56.1 ¶¶ 46-49;

4

Milne Dep. 63. On July 3, 2008, Navigant received a copy of Milne's EEOC charge in its New York office; upon viewing it, Stafford forwarded it to Navigant's human resources department. Def.'s 56.1 ¶¶ 50-51.

Separate from the filing of the EEOC charge, Milne claims Navigant terminated her in retaliation for internal complaints she made (1) to Braithwaite, Goldman, Stewart, and Stafford stemming from the November 16, 2007 incident with Springer and (2) to Braithwaite about Stafford's treatment of her. Milne Dep. 94-95. Milne alleges that, after reporting the Springer incident to Stafford, Stafford treated Milne in a biased manner, scrutinized her work more closely than that of others, micromanaged her time off, and, ultimately, terminated her. Milne Dep. 58-60, 86-92, 117-18.

### C.     Procedural History

On October 20, 2008, Milne filed her original complaint in this action (Dkt. 2). She complained of sexual harassment, discrimination, failure to promote, unequal treatment, a hostile work environment, constructive discharge, and retaliation. On November 30, 2009, the Hon. Naomi Reice Buchwald, to whom this case was previously assigned, dismissed the case in its entirety for failure to state a claim, but gave Milne leave to replead her retaliation claim, and to bring new claims under the FMLA (Dkts. 21 & 25). On February 4, 2010, Milne filed a second amended complaint (Dkt. 24), and, on April 13, 2010, a third amended complaint (Dkt. 28).[2] On October 27, 2010, Judge Buchwald dismissed Milne's FMLA claims, but denied Navigant's motion to dismiss Milne's claim that she was terminated in retaliation for her intention to file a complaint with the EEOC and/or her internal complaints, in violation of Title VII, the NYSHRL, and the NYCHRL (Dkt. 42).

---

[2] Although the docket does not reflect the filing of a first amended complaint, the record indicates that one was filed sometime between October 20, 2008, and November 30, 2009.

On December 22, 2011, discovery in this case closed (Dkt. 61). On January 20, 2012, Navigant moved for summary judgment (Dkt. 64); Milne filed a cross-motion for summary judgment on January 25, 2012 (Dkt. 75). On March 6, 2012, Milne filed her opposition papers (Dkt. 71); on March 12, 2012, Navigant filed its opposition papers (Dkt. 76). On March 27, 2012, Navigant filed its reply (Dkt. 83); on April 2, 2012, Milne filed her reply papers (Dkt. 87).

## II.     Applicable Legal Standards

Summary judgment may be granted only where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts "in the light most favorable" to the non-movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

Once the moving party has adduced facts demonstrating that the non-movant's claims cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot "rely merely on allegations or denials" contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In cases involving allegations of discriminatory retaliation, courts must use "an extra measure of caution" before granting summary judgment in favor of the defense, "because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted). However, "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). Even in such cases, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb*, 521 F.3d at 137.

In considering the cross-motions for summary judgment, the Court is, further, mindful that Milne is a *pro se* litigant whose submissions must be construed to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation and emphasis omitted). However, this forgiving standard "does not relieve plaintiff of [her] duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (citation omitted).

**III.   Analysis**

    **A.   Retaliation Under Title VII**

Under Title VII, it is unlawful for an employer to discriminate against an employee because that employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The statute thus "prohibits an employer from taking materially adverse action against an employee because the employee opposed conduct that Title VII forbids or the employee otherwise engaged in protected activity." *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 567 (2d

Cir. 2011). Title VII is violated when "a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause." *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993).

Title VII retaliation claims are evaluated under the three-step burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010). To establish a prima facie case of retaliation, a plaintiff must show:

> (1) that she participated in an activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action.

*Chin-McKenzie v. Continuum Health Partners*, No. 10-cv-3658, 2012 WL 2512942, at *11 (S.D.N.Y. June 29, 2012) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010)). "A plaintiff cannot establish a *prima facie* case of discrimination under Title VII based on 'purely conclusory allegations of discrimination, absent any concrete particulars.'" *Tanvir v. N.Y. City Health & Hosps. Corp.*, No. 11-143-cv, 2012 WL 1700846, at *1 (2d Cir. May 16, 2012) (slip op.) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985)).

Once a plaintiff has made out a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate reason for the adverse action. *Rojas v. Roman-Catholic Diocese of Rochester*, 660 F.3d 98, 107 (2d Cir. 2011). If defendant does so, a plaintiff must then "come forward with evidence establishing that it is more likely than not the employer's decision was motivated, at least in part, by an intent to retaliate." *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 932-33 (2d Cir. 2010).

### 1. EEOC Complaint

Filing an EEOC charge is a protected activity under Title VII. *See Williams v. Metro-North Commuter R.R. Co.*, No. 11-cv-7835, 2012 WL 2367049, at *8 (S.D.N.Y. June 20, 2012). Milne, however, cannot establish a prima facie case of retaliation, because she cannot point to anything in the record that shows that Navigant knew about the filing of her EEOC charge before it made its decision that her employment would terminate in June 2008. At some point after the November 16 incident with Springer, but before June 2008, Milne told Zerbo, the administrative assistant, that she was planning to file an EEOC charge. Def.'s 56.1 ¶ 39; Pl.'s Counter. ¶ 77; Milne Dep. 55; Affidavit of Karen Zerbo in Support of Defendant's Motion for Summary Judgment ("Zerbo Aff.") (Dkt. 84) ¶ 3. Milne testified at her deposition that she did not tell anyone else at Navigant of her intent to file such a charge, Milne Dep. 54-56, and Zerbo has attested—and there is no evidence to the contrary—that she did not share what Milne told her with anyone else at Navigant, Zerbo Aff. ¶ 4. Milne's EEOC charge was dated June 10, 2008 and filed on June 12, 2008—14 days after Stafford asked Milne when her last day at Navigant would be. Milne Dep. 114; Stafford Aff. ¶ 10 & Ex. D. Milne's last day as a Navigant employee was June 30, 2008. Affidavit of Dorene Dressel in Support of Defendant's Motion for Summary Judgment ("Dressel Aff.") (Dkt. 66) ¶ 12. Navigant first learned that Milne had filed an EEOC charge on July 3, 2008, when it received a copy of the Notice of Charge of Discrimination from the EEOC, itself dated June 30, 2008. Stafford Aff. ¶ 20 & Ex. D.

Milne marshals no evidence tending to show that Navigant, before Milne's last day, or for that matter before July 3, 2008, knew that she had filed (or intended to file) an EEOC charge. To be sure, Milne need not show that the individual decisionmakers at Navigant had knowledge of her intent to file an EEOC charge; she must show only the existence of "general corporate

knowledge" to that effect. *See Smiley v. Cassano*, No. 10-cv-3866, 2012 WL 967436, at *6 (S.D.N.Y. Mar. 21, 2012). However, for Milne to prove general corporate knowledge, there must be evidence in the summary judgment record that Navigant knew of her intent to file, or that she had filed, an EEOC charge. *See Adams v. City of N.Y.*, 837 F. Supp. 2d 108, 121 (E.D.N.Y. 2011). The record lacks such evidence. Rather, the unrebutted evidence shows that: (1) Milne told only Zerbo, an administrative assistant at Navigant, that she planned to file an EEOC charge; (2) Zerbo did not believe Milne when she told her of her intention; (3) Zerbo did not tell anyone else at Navigant; and (4) no one at Navigant learned of the EEOC charge before July 3, 2008, three days after Milne's last day of employment. Milne Dep. 54-56; Zerbo Aff. ¶¶ 3-4; Stafford Aff. ¶ 20 & Ex. D. There is no evidence that Navigant, as a legal entity, had any knowledge prior to the end of the employment relationship of Milne's plans to engage in protected activity. *Cf. Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006) (general corporate knowledge found where non-decisionmaker had received copy of employee's complaint to the state human rights division, and made submissions in opposition); *Summa v. Hofstra Univ.*, No. 08-cv-361, 2011 WL 1343058, at *21 (E.D.N.Y. Apr. 7, 2011) (general corporate knowledge found where four officers and the legal department were aware of employee's protected activity). Milne has pointed the Court to no authority, and the Court is unaware of any, that the knowledge of only an administrative assistant of an employee's intent to file an EEOC charge, where there is no evidence that the administrative assistant shared that knowledge with anyone else, supports a finding of general corporate knowledge.

In her motion papers, Milne states that:

> Upon information and belief, EEOC sent its customary notice to Navigant's NYC and Chicago locations informing this defendant that Plaintiff had filed charges against defendant. Such notice was received between June 10, 2008 and June 30,

>2008 and prior to the company's involuntary termination of Plaintiff which was part and parcel of the continuing retaliation she suffered.

Pl.'s 56.1 ¶ xxx. However, Milne does not point to any record evidence supporting this claim, and all such evidence is to the contrary. A plaintiff, even one proceeding *pro se*, must "provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb*, 521 F.3d at 137. Milne fails to do so.

Furthermore, because there is no dispute, based on the summary judgment record, that Navigant learned of the EEOC charge only *after* Milne's last day at Navigant, Milne cannot show the requisite causal connection between the protected activity and the termination of her employment. It is true that, under certain circumstances, the occurrence of an adverse employment action closely following protected conduct may give rise to an inference of causation so as to make out a prima facie case of retaliation. *See, e.g.*, *Kaytor*, 609 F.3d at 552 ("Close temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action."). Here, however, the timeline simply does not support any such inference. On May 29, 2008, in response to Milne's email discussing a move to Toronto, Stafford asked Milne to provide Navigant with her last day of employment. Milne Dep. 114; Stafford Aff. ¶ 10. Although Milne has argued throughout this litigation that she never intended to leave her position at Navigant voluntarily, she did not inform Stafford of this when Stafford asked Milne to supply her date of departure. Milne Dep. 114-16; Stafford Aff. ¶¶ 11-12. On or around June 11, 2008, Navigant determined that, because Milne had failed to supply Navigant with a departure date, her last day would be June 12, 2008. Dressel Aff. ¶¶ 8-10 & Ex. A. When, on June 11, 2008, Milne informed Navigant's human resources department that she was requesting FMLA leave, Navigant revised Milne's day of departure to

June 30, 2008.  Dressel Aff. ¶¶ 11-12 & Ex. B.  Milne's EEOC charge was filed on June 12, 2008.  Stafford Aff. Ex. D.  Thus, it is clear that, by the time Milne's charge reached the EEOC, Navigant had already decided that Milne's employment would cease at some point during the month of June; no causal connection therefore can reasonably be inferred.  *See Stephan v. W. Irondequoit Cent. Sch. Dist.*, 450 F. App'x 77, 80 (2d Cir. 2011) (because summary judgment record showed that termination decision had been made before filing of internal complaint, no causal connection can be inferred); *Witkowich v. Holder*, No. 05-cv-7756, 2010 WL 1328364, at *5 & n.6 (S.D.N.Y. Mar. 31, 2010) (no sufficient causal connection between filing of EEOC charge and alleged retaliatory action when employer did not have notice of the charge until after undertaking action).

Because the Court holds that no reasonable juror could find that Navigant was aware of either Milne's intent to file an EEOC charge or the charge itself before Milne's last day at Navigant, it does not reach Navigant's alternative argument for summary judgment, that there was no adverse employment action because Milne voluntarily resigned from her position.

### 2. Internal Complaints

It is far from clear, on the basis of Milne's papers submitted at the summary judgment stage, whether she is also arguing that she was terminated in retaliation for internal complaints she lodged at Navigant.  However, given the obligation of this Court to "'construe . . . liberally' the submissions of a *pro se* litigant and to 'interpret them to raise the strongest arguments that they suggest,'" the Court construes Milne's papers to make such an argument.  *Johnston v. Maha*, 460 F. App'x 11, 15 n.5 (2d Cir. 2012) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)) (additional quotations marks and citation omitted).

Read liberally, Milne's papers allege retaliatory termination in response to two separate sets of internal complaints. First, Milne claims that her termination was in retaliation for internal complaints she made to Braithwaite, Goldman, Stewart, and Stafford stemming from the November 16, 2007 incident with Springer. Milne Dep. 94-95. Milne's internal complaints about that incident date from November 2007. Second, Milne claims that her termination was in retaliation for internal complaints she lodged against Stafford with Braithwaite, relating to Stafford's biased comments and micromanaging. Milne testified, at her deposition, that Braithwaite told her that he had informed Stafford of Milne's complaints. Milne's best estimate of when Braithwaite told Stafford about Milne's complaints is summer 2007. *Id.* 91-92.

Milne, however, fails to adduce sufficient evidence that these complaints caused her termination in June 2008.[3] Causation of an adverse employment action traceable to protected activity may be established through direct or indirect evidence. Direct evidence is "evidence of retaliatory animus directed against a plaintiff by the defendant." *DeCintio v. Westchester Cty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987). Indirect evidence may consist of (1) evidence that the protected activity was followed closely by an adverse action, *see Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 224 (2d Cir. 2001), or (2) other evidence, such as disparate treatment of fellow employees who engaged in similar conduct, *see DeCintio*, 821 F.2d at 115.

The evidence here (direct and indirect) fails to support an inference of causation. There is no direct evidence of retaliatory animus; nor indirect evidence sufficient to infer causation, whether in the form of the temporal proximity of Milne's complaints and her termination or evidence that other Navigant employees who lodged internal complaints were thereafter terminated. As noted above, "[c]lose temporal proximity between the plaintiff's protected action

---

[3] The Court assumes, *arguendo*, that Milne can establish the first three elements of a prima facie case of termination in retaliation for the lodging of internal complaints.

and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action." *Kaytor*, 609 F.3d at 552. The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001). However, in general within this Circuit, a two- or three-month lapse between the protected activity and the adverse employment action suffices to sever any inferred causal relationship. *See Thompson v. Morris Heights Health Ctr.*, No. 09-cv-7239, 2012 WL 1145964, at *10 (S.D.N.Y. Apr. 6, 2012) (collecting cases). On the evidence before the Court, at least 10 months, and perhaps more than a year, passed between Milne's complaints to Braithwaite about Stafford's treatment and Milne's termination; further, Milne's termination occurred seven months after her complaints to other employees relating to the incident with Springer. Absent other evidence of causation, these gaps in time (10 and seven months, respectively) are too substantial to allow an inference of causation based on temporal proximity alone. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'").

    **B.**    **Retaliation Under NYSHRL and NYCHRL**

Milne also brings claims for retaliation under the NYSHRL and the NYCHRL.

Section 296(7) of the NYSHRL makes it illegal for:

> any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

N.Y. EXEC. LAW § 296(7).  "Courts apply the same standard used in Title VII cases in analyzing NYSHRL retaliation claims."  *Caban v. Richline*, No. 10-cv-559, 2012 WL 2861377, at *14 (S.D.N.Y. July 10, 2012) (citing *Patane v. Clark*, 508 F.3d 106, 115-17 (2d Cir. 2007)).  Accordingly, no reasonable juror could find retaliatory termination in violation of the NYSHRL, for the same reasons set forth above relating to Title VII.

> Section 107(7) of the NYCHRL makes it unlawful for:
>
> any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, or (v) provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8-115 of this chapter.  The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment, housing or a public accommodation or in a materially adverse change in the terms and conditions of employment, housing, or a public accommodation, provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity.

N.Y.C. ADMIN. CODE § 8-107(7).  Liability for retaliation under the NYCHRL is broader than under the companion federal and state statutes, "in that there is no requirement that the employee suffer a materially adverse action."  *Pilgrim v. McGraw-Hill Cos.*, 599 F. Supp. 2d 462, 469 (S.D.N.Y. 2009); *see also Fincher*, 604 F.3d at 723 ("New York State courts and district courts in this Circuit have concluded . . . that the retaliation inquiry under the CHRL is 'broader' than its federal counterpart.").  However, a plaintiff claiming retaliation under the NYCHRL must still show, as part of her prima facie case of discrimination, that her employer was aware she engaged in a protected activity, and that there was a causal connection between the protected activity and the employer's subsequent action.  *Pilgrim*, 599 F. Supp. 2d at 469.  For the reasons discussed

15

above, the summary judgment record does not support any such finding, and thus no reasonable juror could find that Navigant retaliated against Milne in violation of the NYCHRL.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED, and plaintiff's motion for summary judgment is DENIED. Judgment is hereby entered in favor of defendant as to all counts. The Clerk of Court is directed to terminate the motions pending at docket entries 64 and 75, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: August 13, 2012
       New York, New York